# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **US Pack Script, LLC** (referred to throughout this Agreement as "Defendant") and **Ruth Diamond ("Diamond"), Debra Fischer ("Fischer"),** and **Darrell Joshua Hudson ("Hudson")** (Collectively the "Plaintiffs"). The term "Party" or "Parties" as used herein shall refer to Defendant, Plaintiff, or both, as may be appropriate.

## 1. Recitals.

This Agreement is made with reference to the following facts:

(a) Plaintiffs formerly contracted to perform services for Defendant;

(b) Diamond's last day of services performed for Defendant was on or about August 23, 2019 ("Diamond Separation Date");

(c) Fischer's last day of services performed for Defendant was on or about May 11, 2019 ("Fischer Separation Date");

(d) Hudson's last day of services performed for Defendant was on or about August 13, 2019 ("Hudson Separation Date");

(e) On or about January 8, 2021, Plaintiffs brought an action against Defendant, which is pending as *Ruth Diamond, et al. v. US Pack Script, LLC f/k/a Scriptfleet, Inc.*, United States District Court, Western District of New York Case No.: 6:21-cv-06019 (the "Lawsuit"). In the Lawsuit, Plaintiffs assert claims for unpaid minimum wage and overtime under the Fair Labor Standards Act and New York Labor Law, among others;

(f) There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Plaintiffs and Defendant have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Plaintiffs have or may have against Defendant and/or Defendant's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement; and.

(g) This Agreement is not enforceable unless and until the Court in this matter judicially approves the terms of this Agreement.

**2. Consideration/Indemnification for Tax Consequences and Liens.**

(a) In consideration for Plaintiffs signing this Agreement, and complying with its terms, Defendant agrees to pay the total gross sum of SIXTY THOUSAND DOLLARS ($60,000.00) (the "Settlement Payment"), to be apportioned as follows:

(1) One payment for alleged unpaid minimum wage and overtime by check made payable to "Ruth Diamond" in the amount of SEVENTEEN THOUSAND SEVEN HUNDRED AND NO/100 DOLLARS ($17,700), for which an IRS Form 1099-MISC shall be issued to Plaintiff;

(2) One payment for alleged unpaid minimum wage and overtime by check made payable to "Debra Fischer" in the amount of THREE THOUSAND NINE HUNDRED AND NO/100 DOLLARS ($3,900), for which an IRS Form 1099-MISC shall be issued to Plaintiff;

(3) One payment for alleged unpaid minimum wage and overtime by check made payable to "Josh Hudson" in the amount of EIGHT THOUSAND FOUR HUNDRED AND NO/100 DOLLARS ($8,400), for which an IRS Form 1099-MISC shall be issued to Plaintiff;

(4) One payment for alleged attorneys' fees and costs by check made payable to "The Glennon Law Firm P.C." ("Plaintiff's Counsel") in the amount of THIRTY THOUSAND AND NO/100 DOLLARS ($30,000), for which an IRS Form 1099-MISC shall be issued to each of Plaintiffs and Plaintiffs' Counsel;

(b) Plaintiffs understand and agree that Defendant is providing Plaintiffs with no representations regarding tax obligations or consequences that may arise from this Agreement.

(c) Any settlement payments made by check set forth in this paragraph will be delivered to Plaintiff's Counsel at 160 Linden Oaks, Rochester, New York, 14625.

**3. No Consideration Absent Execution of this Agreement.**

Plaintiffs understand and agree that Plaintiffs would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Plaintiffs' timely execution of this Agreement and the fulfillment of the promises contained herein.

**4. Disbursal of Settlement Funds/Dismissal of Action.**

(a) The settlement payments described in Paragraph 2(a) will be sent within ten (10) business days after the latest of the following have occurred:

(1) counsel for Defendant receives a copy of the Agreement signed by Plaintiffs;

(2) the revocation periods following the signing of this Agreement for each Plaintiff have expired;

(3) counsel for Defendant receives an executed W-9 Form from Plaintiffs' Counsel; and

(4) approval of the Parties' settlement agreement by the Court and dismissal of the Lawsuit with prejudice.

**5. <u>General Release, Claims Not Released and Related Provisions.</u>**

(a) **<u>General Release of All Claims.</u>** Plaintiffs and Plaintiffs' heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiffs have or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

Title VII of the Civil Rights Act of 1964;
Sections 1981 through 1988 of Title 42 of the United States Code;
The Employee Retirement Income Security Act of 1974 ("ERISA");
The Internal Revenue Code of 1986;
The Immigration Reform and Control Act;
The Americans with Disabilities Act of 1990;
The Worker Adjustment and Retraining Notification Act;
The Fair Credit Reporting Act;
The Family and Medical Leave Act;
The Equal Pay Act;
The Genetic Information Nondiscrimination Act of 2008;
The Age Discrimination in Employment Act of 1967 ("ADEA");
The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
Families First Coronavirus Response Act;
The New York State Executive Law (including its Human Rights Law);
The New York Equal Pay Law;
The New York Non-Discrimination for Legal Activities Law;
The New York Whistleblower Law;
The New York Workers' Compensation Law;
The New York wage and hour and wage payment laws and regulations;
The New York Paid Sick Leave Law;
The New York False Claims Act;
The New York Criminal and Consumer Background Laws, N.Y. Gen. Bus. Law Sec. 380-B et seq.;
The Non-Discrimination and Anti-Retaliation Provisions of the New York Workers' Compensation Law and

the New York Disabilities Law;
The New York Labor Law;
The New York State Worker Adjustment and Retraining Notification Act;
The New York Occupational Safety and Health Laws;
The New York Fair Credit Reporting Act;
The New York Constitution;
The New York City Administrative Code and Charter (including its Human Rights Law);
The New York City Earned Sick Time Act;
The New York City Temporary Schedule Change Law;
The New York City Human Rights Law;
The New York City Civil Rights Law;
any other federal, state or local law, rule, regulation, or ordinance;
any public policy, contract, tort, or common law; or
any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters, beyond what has been agreed to in paragraph 2.

(b) **Claims Not Released.** Plaintiffs are not waiving any rights Plaintiffs may have to: (i) pursue claims which by law cannot be waived by signing this Agreement; or (ii) enforce this Agreement.

(c) **Governmental Agencies.** Nothing in this Agreement prohibits, prevents, or otherwise limits Plaintiffs from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Plaintiffs' rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Plaintiffs agree that if such an administrative claim is made, Plaintiffs shall not be entitled to recover any individual monetary relief or other individual remedies.

(d) **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Plaintiffs waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendant or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Plaintiffs waive Plaintiffs' right to a jury trial subject to applicable law.

**6. <u>Acknowledgements and Affirmations.</u>**

(a) Plaintiffs affirm that Plaintiffs have not filed, caused to be filed, or presently is a party to any claim against Defendant, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Plaintiffs' rights under whistleblower laws or cause Plaintiffs to disclose Plaintiffs' participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b) This Settlement Agreement is contingent on the Court's approval of the Agreement. However, should the Court award Plaintiff's counsel less than the requested amount of attorney's fees, and otherwise approve of this Settlement Agreement, then the remainder of the Agreement will be enforceable. In such circumstances, Defendant shall pay only the amount of attorney's fees and costs ordered by the Court, subject to Plaintiff's appellate rights.

(c) Plaintiffs also affirm that Plaintiffs have been paid and/or have received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Plaintiffs sign this Agreement and Plaintiffs have been reimbursed for all necessary expenses or losses incurred by Plaintiffs within the scope of Plaintiffs' employment. Plaintiffs further affirm that Plaintiffs have submitted expense reports for all necessary expenses or losses incurred by Plaintiffs within the scope of Plaintiffs' employment. Plaintiffs affirm that Plaintiffs have been granted any leave to which Plaintiffs were entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(d) Plaintiffs further affirm that Plaintiffs have no known workplace injuries or occupational diseases.

(e) Plaintiffs also affirm that Plaintiffs have not divulged any proprietary or confidential information of Defendant and will continue to maintain the confidentiality of such information consistent with Defendant's policies and Plaintiffs' agreement(s) with Defendant and/or common law. Under the federal Defend Trade Secrets Act of 2016, Plaintiffs shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Plaintiffs' attorney in relation to a lawsuit against Defendant for retaliation against Plaintiffs for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(f) Plaintiffs further affirm that Plaintiffs have not reported internally to Defendant any allegations of wrongdoing by Defendant or its officers, including any allegations of corporate fraud, and Plaintiffs have not been retaliated against for reporting or objecting to any such allegations internally to Defendant.

(g) Plaintiffs shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with Defendant or any of Defendant's affiliates including but not limited to Partsfleet, LLC, Partsfleet

II, LLC, Fleetgistics Holdings, LLC, Scriptfleet, LLC, US Pack Services, LLC, Medifleet, LLC, US Pack Holdings, LLC and US Pack Logistics, LLC under any circumstances because of, among other things, irreconcilable differences with Defendant. Plaintiffs agree that, if Plaintiffs accept employment or other work engagement with any of the above-referenced entities in contravention of this Agreement, such entity may terminate Plaintiffs' employment or work engagement immediately and Plaintiffs shall have no claim against such entity, in law or equity, related to such termination (to the fullest extent permitted by law).

(h) Plaintiffs affirm that all of Defendant's decisions regarding Plaintiffs' pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(i) Plaintiffs and Defendant acknowledge Plaintiffs' rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

**7. <u>Return of Property.</u>**

Except as provided otherwise in this Agreement or by law, Plaintiffs affirm that Plaintiffs have returned all of Defendant's property, documents, and/or any confidential information in Plaintiffs' possession or control.

Plaintiffs also affirm that Plaintiffs are in possession of all of Plaintiffs' property that Plaintiffs had at Defendant's premises and that Defendant is not in possession of any of Plaintiffs' property.

**8. <u>Medicare Secondary Payer Rules.</u>**

With respect to Plaintiffs not eligible for and/or enrolled in Medicare, as a term of this Agreement, the parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules. In doing so, such Plaintiffs affirm that as of the date Plaintiffs sign this Agreement, Plaintiffs are not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Plaintiffs under this settlement, Plaintiffs agree to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Plaintiffs, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Plaintiffs are required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

With respect to Plaintiffs that are eligible for and/or enrolled in Medicare, such Plaintiffs affirm that Plaintiffs' claims against Defendant do not involve any illness, injury, incident, or

accident for which medical expenses were, or are expected to be, incurred. Accordingly, such Plaintiffs affirm that Medicare has no interest in the payment under this Agreement. Nonetheless, if the Centers for Medicare & Medicaid Services (the "CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Plaintiffs under this Agreement, Plaintiffs agree to indemnify, defend, and hold Defendant harmless from any action by the CMS relating to medical expenses of Plaintiffs. Plaintiffs agree to reasonably cooperate with Defendant upon request with respect to (i) any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and (ii) any claim the CMS may make and for which Plaintiffs are required to indemnify Defendant under this Section. Furthermore, Plaintiffs agree to waive any and all future actions against Defendant for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).]]

**9. Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Plaintiffs agree to sign a replacement release in a form provided by Plaintiffs.

**10. Nonadmission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**11. Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

**12. Entire Agreement.**

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for the Parties' Independent Contractor agreement including all provisions therein, which shall remain in full force and effect according to their terms. Plaintiffs acknowledge that Plaintiffs have not relied on any representations, promises, or agreements of any kind made to Plaintiffs in connection with Plaintiffs' decision to accept this Agreement, except for those set forth in this Agreement.

**13. Counterparts and Signatures.**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

**14. Mutual Negotiation.**

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

**15. Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Plaintiffs or any party acting on Plaintiffs' behalf.

**PLAINTIFFS ARE ADVISED THAT PLAINTIFFS THAT ARE OVER THE AGE OF 40 HAVE UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. PLAINTIFFS ALSO ARE ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO PLAINTIFFS' SIGNING OF THIS AGREEMENT.**

**PLAINTIFFS OVER THE AGE OF 40 MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH PLAINTIFFS SIGN OR ENTER INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO US PACK'S COUNSEL, ERIC MAGNUS AT ERIC.MAGNUS@JACKSONLEWIS.COM AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE RECEIVED BY US PACK'S COUNSEL, ERIC MAGNUS AT ERIC.MAGNUS@JACKSONLEWIS.COM OR HIS DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER PLAINTIFFS SIGN OR ENTERS INTO THIS AGREEMENT.**

**PLAINTIFFS AGREE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.**

**PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFFS HAVE OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**DEBRA FISCHER**

By: DocuSigned by: Debra Fischer D415C63CF975406...

Print Name: Debra Fischer

Date: 6/9/2022

**US PACK SCRIPT, LLC**

By: ______________________
David B. Hunter
Chief Financial Officer

Date: 6/9/2022

**JOSH HUDSON**

By: ______________________

Print Name: ______________________

Date: ______________________

**RUTH DIAMOND**

By: ______________________

Print Name: ______________________

Date: ______________________

4874-4168-8098, v. 1

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**DEBRA FISCHER**

By:______________________________

Print
Name:___________________________

Date:___________________________

**US PACK SCRIPT, LLC**

By: _________________________________
Elizabeth Billias
Director of Compliance

Date:_________________________________

**JOSH HUDSON**

By:_____________________________

Print Name:____________________

Date:___________________________

**RUTH DIAMOND**

By: Ruth Diamond

Print Name: Ruth Diamond

Date: 6/8/22

4874-4168-8098, v. 1

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**DEBRA FISCHER**

By:____________________________

Print
Name:__________________________

Date:__________________________

**US PACK SCRIPT, LLC**

By: ____________________________
Elizabeth Billias
Director of Compliance

Date:__________________________

**JOSH HUDSON**

By: [signature]

Print Name: Josh Hudson

Date: 6-8-22

**RUTH DIAMOND**

By: ____________________________

Print Name:__________________________

Date:__________________________

4874-4168-8098, v. 1